Robert G. Gilchrist (3715)
Jeff M. Sbaih (14014)
**EISENBERG GILCHRIST & CUTT**
900 Parkside Tower
215 South State Street
Salt Lake City, Utah  84111
Telephone:  (801) 366-9100
Email: rgilchrist@braytonlaw.com
Email: jsbaih@braytonlaw.com

*Attorneys for the Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| DIANE ANDERSEN, an individual, and SUZANNE ANDERSEN, an individual, CHRISTOPHER W. ANDERSEN, an individual, CHRISTOPHER J. ANDERSEN, an individual,<br><br>　　Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION, a foreign corporation, TOYOTA MOTOR NORTH AMERICA, INC., a foreign corporation, TOYOTA MOTOR ENGINEERING AND MANUFACTURING NORTH AMERICA, INC., a foreign corporation, TOYOTA MOTOR SALES USA, INC., a foreign corporation, and JOHN DOES 1 through 20, "whose true names are unknown"<br><br>　　Defendants. | **COMPLAINT & JURY DEMAND**<br><br>　Case No.: _____<br><br>　　Judge: _____ |

Plaintiffs, by and through counsel, hereby complain and for cause of action allege the following:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff Diane Andersen ("Diane Andersen") is a resident of the State of Utah.

2. Plaintiff Suzanne Andersen ("Suzie Andersen") is a resident of the State of Utah.

3. Plaintiff Christopher W. Andersen is a resident of the State of Utah.

4. Plaintiff Christopher J. Andersen is a resident of the State of Utah.

5. Defendant, Toyota Motor Corporation, is Japanese Corporation that currently and at all times mentioned herein was in the business of selling and distributing vehicles in the State of Utah.

6. Defendant Toyota Motor North America, Inc. is a corporation organized and existing under the laws of the State of California with its USA headquarters located in Torrance, California. Toyota Motor North America, Inc. is a wholly owned subsidiary of Toyota Motor Corporation and is the holding company for all of its parent's North American operations, covering sales, engineering, and manufacturing subsidiaries.

7. Defendant Toyota Motor Engineering and Manufacturing North America, Inc. is a corporation organized and existing under the laws of the State of Kentucky with its USA headquarters in Erlanger, Kentucky. Toyota Motor Engineering and Manufacturing North America, Inc. is responsible for Toyota's engineering design, research and development, and manufacturing activities in the United States, Canada and Mexico.

8. Defendant Toyota Motor Sales USA, Inc. is a corporation organized and existing under the laws of the State of California with its USA headquarters located in Torrance,

California. Toyota Motor Sales USA, Inc. markets, distributes and sells Toyota, Prius, Scion and Lexus vehicles manufactured by Defendant Toyota Motor Corporation throughout the United States.

9. Toyota Motor Sales USA, Inc., Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor North America, Inc., and Toyota Motor Corporation are hereinafter collectively referred to as "Toyota."

10. Defendants John Does 1-20 are unknown entities that may have assisted in and/or worked on the design, manufacture, assembly, and distribution of component parts used in the Toyota vehicles such as the one used by Plaintiffs, which was used within the State of Utah.

11. Jurisdiction is proper in this matter in this court pursuant to 28 U.S.C. § 1332.

12. Venue is proper in this court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

13. Diane Andersen owned a 2005 Toyota 4Runner (VIN: JTEBU14RX58048847) ("the Vehicle").

14. On October 18, 2012, Plaintiff Diane Andersen was driving the Vehicle on I-15 near the 5300 South exit.

15. Suzie Andersen was a passenger in the Vehicle.

16. Diane Andersen attempted to slow down as she drove onto a freeway off-ramp, but the Vehicle continued to accelerate.

17. Diane Andersen was unable to slow or stop the Vehicle and collided at a high speed with a cement truck driving westbound on 5300 South.

18. Defendant Toyota Motor Corporation is one of the world's largest automobile manufacturers. Toyota manufactures numerous vehicles sold under various brand names including Toyota, Prius, Scion and Lexus.

19. Toyota has issued more than 10 million recall notices for problems related to unintended acceleration, with approximately 2 million vehicles subject to more than one recall. The recalls followed consumer reports of numerous crashes involving Toyota vehicles causing injury, death and concerns about significant risk of injury and death to vehicle occupants, other motorists, and pedestrians.

20. The recalls issued by Defendants included:

    a. Safety Recall A0A - Accelerator Pedal Reinforcement Bar Installation Code: A0A Memo

    b. Safety Recall 90L - Potential Floor Mat Interference with Accelerator Pedal Code: 90L Memo

    c. Certain 2009-2010 Toyota Corolla, Corolla Matrix and 2008-2009 Scion xD Vehicles Equipped with 2ZR-FE (1.8 liter) Engines Brake System Vacuum Port Code: 90H

21. Toyota initially blamed the unintended accelerations on floor mats that could entrap the accelerator. Toyota later expanded possible factors causing unintended acceleration to include gas pedals that could stick.

22. Prior to the accident, Plaintiff Diane Andersen had received the 90L Memo and had therefore already serviced the Vehicle for the potential floor mats' interference with the Accelerator pedal.

23. The causes of unintended acceleration are more than mechanical and include unsafe electronic defects in Toyota vehicles. Toyota was aware of safety problems with unintended acceleration for a significant period of time and intentionally failed to disclose the full scope of problems fearing full disclosure and broadened safety recalls might harm Toyota's reputation and sales.

24. Toyota failed to properly and timely remedy an unsafe and defective throttle control system known as drive-by-wire accelerator controls or Electronic Throttle Control System with Intelligence (ETCS-I) or Electronic Throttle Control System (ETCS) (collectively ETC) in multiple Toyota models. The unsafe and defective accelerators on the Toyota vehicles can make it difficult and sometimes impossible to stop the vehicle.

25. In the last decade, the electronic throttle system in many Toyota vehicles used sensors, microprocessors and electronic motors instead of mechanical linkage or steel cable to connect the accelerator pedal to the throttle plate. When the ETC system was first introduced by Toyota in 1998, vehicles using it also had a mechanical throttle as a failsafe back up in the event of a problem with the ETC system. Beginning in or about 2001, vehicles made by Toyota have no such failsafe mechanical linkage. In addition, although many vehicle manufacturers use a safety feature known as a "brake to idle override" that enables drivers to override the electronic throttle and control the vehicle in the event of sudden unintended acceleration, Toyota has failed to equip vehicles with this safety feature. Many of Toyota vehicles now include an electronic ignition button rather than a mechanical ignition key-turned switch.

26. The combination of the lack of these safety systems creates a situation in which there are no mechanical or electronic fail-safe mechanisms to allow the driver to effectively stop or slow the care in such circumstances.

27. Toyota sought to conceal the defect in its electronic throttle controls by publicly stating that sudden unintended acceleration in Toyota vehicles was caused by floor mats. Toyota was aware the floor mats were not the cause of sudden unintended acceleration.

28. On September 29, 2009, the National Highway Traffic Safety Administration (NHTSA) issued a warning to owners of Toyota and Lexus vehicles that Toyota had announced it would be launching a safety recall of various model year vehicles to redress the problem. NHTSA warned owners to remove all driver side floor mats from the effected models immediately as an interim safety measure in advance of the recall. That same day, Toyota launched a safety recall on eight Toyota and Lexus vehicles.

29. Defendants continued to receive consumer complaints regarding vehicles not included in the September 2009 recall. Toyota continued to claim that the incidents "appear to be related to factors including the use of a variety of unsecured mats, the particular configuration of the accelerator pedals in these vehicles, and the unique steps needed to shut off the engines in some of the vehicles containing keyless ignitions."

30. Toyota issued false and misleading reports denying the actual defects leading to the unintended acceleration. On November 5, 2009, NHTSA issued a statement correcting inaccurate and misleading information put out by Toyota. The statement also noted that Toyota had not corrected the problem through its prior recall.

31. Toyota announced the recall of additional vehicles due to the floor mat issues. Toyota assured consumers that the only effected vehicles were those included in that recall. This was another untrue and false statement.

32. A former Toyota lawyer responsible for handling safety litigation sued Toyota, disclosing that Toyota perpetrated a "calculated conspiracy to prevent the disclosure of damaging evidence" as part of a pattern and practice to "prevent evidence of its vehicles' structural shortcomings from becoming known" to Plaintiffs' lawyers, courts, NHTSA and the public.

33. On February 8, 2010, Toyota finally admitted the critical component parts in Toyota vehicles were defective and issued a massive recall.

34. The Defendants John Does 1 through 20, "whose true names are unknown," are other individuals, companies, corporations who were involved in the design, manufacture, and/or marketing of the component parts used in Toyota Motor vehicles, and may have contributed to causing the damages alleged herein.  Plaintiffs reserve the right to amend the complaint and upon Discovery of such information to name such parties as specific defendants in place of the John Doe defendants.

35. As a direct and proximate result of the above described accident, Plaintiffs Diane Andersen and Suzie Andersen suffered severe personal injuries and property damage.

36. As a direct and proximate result of the above described accident, Plaintiffs Diane Andersen and Suzie Andersen sustained, and will continue to sustain, non-economic damages, including, without limitation, pain and suffering, and other non-economic damages as recoverable by law.  Further, Plaintiffs have incurred, and will continue to

incur, economic damages, including, without limitation, reasonable and necessary past and future medical expenses, past and future lost wages, lost earnings capacity, lost benefits, and other economic damages as the evidence may show at trial.

37. Plaintiff Christopher W. Andersen is at all relevant times married to Diane Andersen.

38. Plaintiff Christopher J. Andersen is at all relevant times married to Suzie Andersen.

## FIRST CAUSE OF ACTION
### (Strict Product Liability v. Defendants)

39. Plaintiffs incorporate all previous paragraphs and further allege the following:

40. Defendants, at all times relevant, were in the business of manufacturing, testing, marketing, selling, and/or distributing automotive vehicles, including the vehicle used by Plaintiffs; as intended by Defendants, the vehicle reached the end user without substantial modification or alteration.

41. At the time the vehicle was placed into the stream of commerce it was defective and unreasonably dangerous to Plaintiffs, without limitation, as follows:

    a. Defects in the design of the product;

    b. Defects in the manufacture of the product;

    c. Defects in the warning or labels accompanying the product; and/or

    d. Other defects that may later be revealed during discovery.

42. The defective, unreasonably dangerous condition of the vehicle was a direct and proximate cause of Plaintiffs' damages.

## SECOND CAUSE OF ACTION
### (Negligence v. Defendants)

43. Plaintiffs incorporate all previous paragraphs and further allege the following:

44. Defendants had a duty to exercise reasonable care in the design, testing, manufacturing, inspection, quality control, quality assurance, marketing, distribution, and/or sale of the vehicle.  Defendants failed to exercise reasonable care in the same, which failure to exercise reasonable care constitutes negligence.

45. Defendants' negligence was a direct and proximate cause of Plaintiffs' damages.

### THIRD CAUSE OF ACTION
**(Breach of Express Warranty v. Defendants)**

46. Plaintiffs incorporate all previous paragraphs and further allege the following:

47. Defendants expressly warranted that the vehicle was free from defects.

48. Defendants breached their expressed warranties, and these breaches of warranty were a direct and proximate cause of Plaintiffs' damages.

### FOURTH CAUSE OF ACTION
**(Breach of Implied Warranties v. Defendants)**

49. Plaintiffs incorporate all previous paragraphs and further allege the following:

50. Defendants were merchants with respect to the type of goods that included the vehicle and implicitly warranted that the vehicle was merchantable.

51. Defendants had reason to know the particular purpose for which the vehicle would be used, and that Plaintiffs were relying on Defendants' skill and judgment to provide suitable products.

52. Defendants implicitly warranted that the vehicle was fit for the purpose for which it was required and used.

53. Defendants breached these implied warranties, and these breaches of warranty were a direct and proximate cause of Plaintiffs' damages.

## FIFTH CAUSE OF ACTION
### (Loss of Consortium, U.C.A. Section 30-2-11 – All Defendants)

54. Plaintiffs incorporate all preceding paragraphs herein and further allege the following:

55. Diane Andersen was during all relevant times married to Plaintiff Christopher W. Andersen.

56. Suzie Andersen was during all relevant times married to Plaintiff Christopher J. Andersen.

57. Diane Andersen and Suzie Andersen both sustained severe and permanently disabling injuries for which all of the Defendants, or any one of them, are liable.

58. As a result of Diane Andersen and Suzie Andersen's injuries, Plaintiffs Christopher J. Andersen and Christopher W. Andersen have sustained a loss of consortium for which all of the Defendants, or any one of them, are liable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against Defendants in an amount to be determined by the trier of fact for the following damages:

1. For economic damages both past and future.
2. For non-economic damages as alleged and proven at trial.
3. For exemplary damages.
4. For punitive damages according to proof.
5. For pre-judgment interest as provided by Utah law.
6. For costs and attorney fees incurred herein.
7. For such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues of fact in this matter.

DATED this 13th day of December, 2012.

              EISENBERG GILCHRIST & CUTT


              /s/ Jeff M. Sbaih
              Robert G. Gilchrist
              Jeff M. Sbaih


Plaintiffs Diane Andersen and Christopher W. Andersen's Address
221 Liberty Rd
North Salt Lake, Utah 84054

Plaintiff Suzanne Andersen and Christopher J. Andersen's Address
438 West 3200 South
Bountiful, Utah 84010